IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN McKENNA,<br>        Plaintiff,<br>-v.-<br><br>THE TOWN OF OYSTER BAY and JOE SALADINO, individually and in his official capacity as Supervisor of THE TOWN OF OYSTER and Presiding Officer of the Oyster Bay Town Board.<br><br>        Defendants. | 2:20 CV 4905<br><br>**COMBINED AFFIRMATION AND MEMORANDUM OF LAW IN SUPPORT OF A TEMPORARY RESTRAINING ORDER** |

1. I am the attorney for the Plaintiff in the instant action, and I make this Affirmation in support of an Order to Show Cause enjoining defendants from prohibiting enforcing the Town's new Decorum Rules.

I. **LEGAL STANDARD**

2. The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. ofTex. V Camenisch*, 451 U.S. 390, 395 (1981). A party seeking a preliminary injunction must show the party is "likely to succeed on the merits, he is likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). "A movant need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt." *Abdul Wali v. Coughlin*, 754 f.2d 1015, 1025 (2d Cir, 1985).

## II. MOVANTS SATISFY THE REQUIREMENTS FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMNARY INJUNCTION

### A. Movants Will Succeed on the Merits

i) <u>Oyster Bay Resolution 567-2020 is preempted by New York State Criminal Procedure and Penal Law</u>

3. Oyster Bay Resolution 567-2020 Section 1 states in pertinent part,

> Speakers shall observe the commonly accepted rules of courtesy, decorum, dignity and good taste and shall not use foul language, display unacceptable behavior or be disruptive of the proceedings. Speakers may not make personal comments about public officials, town residents or others. Members of the public and Board members shall be allowed to state their positions in an atmosphere free of slander, threats of violence or the use of the Board meeting as a forum for politics...Any person making offensive insulating, threatening, insolent, slanderous or obscene remarks or gestures, or who becomes boisterous, or who makes threats against any person or against public order and security while in the Board Room, either while speaking at the podium or as a member of the audience, shall be forthwith removed at the direction of the presiding officer. Any person Removed from a public meeting at the direction of the presiding officer may be charged with disorderly conduct in accordance with New York State Penal Law Section 240.20 (See Exhibit A for full the full Resolution)

4. The final sentence of the resolution empowers the presiding officer to "charge" an individual removed from a town board meeting with disorderly conduct. In the context it seems "charge" either means arrest or filling of an accusatory instrument.

5. These purports to be a criminal statute without a *mens rea* requirement. This makes one strictly criminally liable for engaging in any number of vaguely defined speech acts.

6. The District Attorney of Nassau County Madeline Singas expressed deep concern about this Resolution, saying:

> "These rules appear to provide for charging a board meeting attendee if the presiding officer believes they violate vague and subjective rules of decorum, which lack required elements of the charge of disorderly conduct. The First Amendment strongly protects speech petitioning the government, and laws that seek to punish those exercising their free speech rights must be scrutinized very carefully. <u>See</u> *Oyster Bay Adds rules that Could Lead to Prosecution for Disrupting Board Meetings.* "Newsday", October 12, 2020.

7. New York Criminal Procedure Law clearly lays out three ways a lawful arrest can occur. An arrest can occur either pursuant to New York Criminal Procedure Law 120, or without

a warrant pursuant to 140.25 or 140.30. None of those statutory provisions contemplate an arrest being ordered by a presiding officer of a Town Board meeting.

8. If, on the other hand, the statute is read as empowering the presiding officer to file a criminal information, the procedure for that is outlined in New York Criminal Procedure Law 120 which does not contemplate any special powers reserved for presiding officers.

9. In either case, granting to a presiding officer any power to arrest and/or charge a board attendee is preempted by Criminal Procedure Law since the entire field of criminal procedure is preempted by New York State Law. See *Matter of Chwick v. Mulvey*, 81 AD3d 161, 169-170 (2nd Dept. 2010) (holding: The "home rule provision" of the State Constitution (see NY Const, art IX, § 2) "confers broad police power upon local government relating to the welfare of its citizens" (*New York State Club Assn. v City of New York*, 69 NY2d 211, 217 (1987), *affd* 487 US 1 (1988). However, this local power is subject to fundamental limitation by the preemption doctrine.)

10. Besides, being preempted by New York State Criminal Procedural Law, the resolution has difficulties with substantive penal law.

11. Similarly, New York Penal Law 240.20 states seven (7) categories of behavior that are punishable and a *mens rea* requirement for the seven categories. It reads in pertinent part:

> A person is guilty of disorderly conduct when, with **intent** to cause public inconvenience, annoyance or alarm, or **recklessly** creating a risk thereof:
> 1. He engages in fighting or in violent, tumultuous or threatening behavior; or
> 2. He makes unreasonable noise; or
> 3. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or
> 4. Without lawful authority, he disturbs any lawful assembly or meeting of persons; or
> 5. He obstructs vehicular or pedestrian traffic; or
> 6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or

> 7. He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose.

12. Furthermore, Penal Law 240.20 (4) indicates how disorderly conduct relates to town board meetings. Clearly the New York State Legislature, to the extent that disorderly conduct is applicable to Town Board meetings, wished to occupy the field and did not provide for a local municipality to add to the possible offenses cognizable under the law.

13. This puts the municipal Resolution at a "head on conflict" with a New York State Law, and, as such, is preempted. "The crux of conflict preemption is whether there is "a head-on collision between the . . . ordinance as it is applied" and a state statute". See *Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs*, 74 NY2d 761, 762-763 (1989).

### ii) <u>Resolution 567-2020 is a content-based restriction on speech and presumptively invalid</u>

Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests. See *Reed v. Town of Guilbert*, 135 S.Ct. 2218 (2015).

14. "Under the prevailing constitutional framework, speech restrictions imposed by the government on property that it owns are analyzed under a "forum-based approach." See *Hotel Employees & Rest. Employees Union, Local I 00 & Vicinity, AFL CIO v. City of N.Y Dep't of Parks & Recreation*, 311 F.3d 534, 544 (2d Cir. 2002)

15. While town council meetings are considered a limited public forum, the government may not, even in a limited forum, "regulate speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Anello v.*

*City of Niagara Falls*, No. 09-CV-715S, 2012 U.S. Dist. LEXIS 96165, at 7-8 (W.D.N.Y. July 8, 2012).

16. Furthermore, a statute is facially invalid if it prohibits a substantial amount of protected speech. *United States v. Williams*, 553 U.S. 285, 304 (2008) See also *United States v. Stevens*, 559 U.S. 460, 473, 130 S. Ct. 1577, 1587, 176 L. Ed. 2d 435 (2010).

17. The Supreme Court made clear that it will not sustain criminal convictions on the basis of "obscene" language even in a town board meetings. See *Rosenfeld v. Jew Jersey*, 408 U.S. 901 (1972).

18. In *Rosenfeld*, the Court overturned the disorderly conduct conviction of a man who used the adjective 'M— f—' on four (4) different occasions while concluding his remarks" to an audience of about one hundred fifty (150) people that included about forty (40) children and twenty-five (25) women at a public-school board meeting. *Id.*

19. Even more to the point, Courts in this district found that statements that are even in poor taste are permissible in a town board meetings, and that it is a violation of the First Amendment to remove a speaker at Town Board for referring to Board members as "Guinea and Greaseballs". *Anello v. City of Niagara Falls*, No. 09-CV-715S, 2012 U.S. Dist. LEXIS 96165, at 7-8 (W.D.N.Y. July 8, 2012).

20. A recent Supreme Court decision has found that even in limited public forums, "unmoored" restrictions on speech such as vague terms to outlaw speech will be too overbroad to be enforceable. In *Minnesota Voters Alliance v. Mansky*, 585 U.S. ___ (2018), the Supreme Court found dispositive that the term "political" was content based and "unmoored" and overly broad. John Roberts writing for the majority noted that the unmoored term "political" carried with it the possibility for arbitrary interpretation. He noted, "It is "self-evident" that an

indeterminate prohibition carries with it "[t]he opportunity for abuse, especially where [it] has received a virtually open-ended interpretation." *Id.*

21. Resolution 567-2020 is replete with overly broad terms that attempt to regulate the content of speech based on the pressing officers subjective whims.

22. The resolution bans speech that is "not in good taste", "political' and "boisterous". It would be hard pressed to find a legislative body that at times does not enter into boisterous, political speech that is not in good taste.

23. Furthermore, these speech acts need not be uttered on the record or while addressing the board. One can be in violation merely by being a member of the audience and uttering words that the presiding officer finds to be not in "good taste".

24. What is more, uttering words not in good taste can be raised to a criminal act if the presiding officer in his or her description deems it so.

25. Oyster Bay Resolution 567-2020 is a content based restriction on speech that would lead to prosecutions in which the Courts have determined to be unsustainable.

26. Resolution 567-2020 reads, "Members of the public and Board members shall be allowed to state their positions in an atmosphere free of slander, threats of violence or the use of the Board meeting as a forum for **politics**..." This clearly indicates that the resolution is meant to prohibit political speech.

27. It is clear through Defendants admissions the Resolution is intended to curtail the political speech of a "select few".

28. Defendant Saladino when asked why the law was passed, informed a Long Island Herald Newspaper reporter Laura Lane that the purpose of the law, while ostensibly written to stop disruption, was in reality meant to prevent a "select few" people who come to speak at

meetings with a "political agenda". See Exhibit "B" which is an article from Long Island Herald entitled *Town of Oyster Bay Budget Passes, Before Heated Public Session*, "Long Island Herald", October 30, 2020.

29. The article in pertinent part reads, "...Saladino was asked if the reason why the law was created was unruly behavior, Saladino said, "Yes." He added, "A *select few* individuals come to the meeting every time who have a political agenda. The public doesn't want this. We have residents, both children and adults, who come to the meeting to be honored. We want them to feel comfortable " *Id*

30. As pointed out in Plaintiff's Affidavit Paragraphs 4-31, Town Board meetings are perfunctory shows where elected officials grandstand. This is the sheer antithesis of what the Resolution purports to prohibit and strains credulity to believe that the presiding officer would remove a member of the board for political grandstanding, but clearly the presiding officer would, has, and will remove members of the public for political comments. The town has police remove a Newsday reporter citing decorum rules. The town has had police remove Robert Ripp citing decorum rule despite the fact that Mr. Ripp was vindicated in an Article 78 proceeding. The town has removed Plaintiff in this action on debate about this very resolution. The town has even blocked the Town Clerk from speaking on the record in regard to why Freedom of Information Requests were being handled improperly in his opinion.

31. The Resolution is also unconstitutional because it is a criminal prohibition on free speech that fails to give a reasonable person any idea of what speech acts are definitively prohibited.

32. Rather than definitively define what constitutes "good taste", "political" or "boisterous", the resolution indicates that these terms will be defined on the fly and at the presiding officers whim.

> Any person making offensive insulting, threatening, insolent, slanderous or obscene remarks or gestures, or who becomes boisterous, or who makes threats against any person or against public order and security while in the Board Room, either while speaking at the podium or as a member of the audience, shall be forthwith removed ***at the direction of the presiding officer***.  Any person Removed from a public meeting at the direction of the presiding officer may be charged with disorderly conduct in accordance with New York State Penal Law Section 240.20

33. Oyster Bar Resolution fails to specifically define what manner of speech is prohibited leaving a speaker unsure of violating the resolution.

34. Not only is the law confusing to a person of reasonable intelligence concerning what is prohibited, but several prominent attorneys, public officials, and journalist organizations are taken aback by the current law.

35. Charles Levine, the current assemblyman and former prominent criminal defense attorney, stated the following with regard to the resolution in a letter to Defendant Saladino and the Board,

> Dear Supervisor and Councilmembers:
>
> It sends a frightening and chilling message to our citizens when a local government feels obligated to impose criminal penalties on citizens who exercise our First Amendment Right to free speech.
>
> Being criticized is part and parcel of the nature of serving in public office. That is an inherently American principle.
>
> The right of a citizens to express their grievances is enshrined in our Federal and State Constitutions.
>
> You must rescind your decision to punish and intimidate those you disagree with politically. See Exhibit I.

36. Madeline Singas the Nassau County District attorney said,

> "These rules appear to provide for charging a board meeting attendee if the presiding officer believes they violate vague and subjective rules of decorum, which lack required elements of the charge of disorderly conduct. The First Amendment strongly protects speech petitioning the government, and laws that seek to punish those exercising their free speech rights must be scrutinized very carefully.  See, *Oyster Bay Adds rules that Could Lead to Prosecution for Disrupting Board Meetings.* Newsday, October 12, 2020.

37. The Long Island Press Club Published an Open Letter stating,

> The board of the Press Club of Long Island, the local chapter of the Society of Professional Journalists, strongly objects to the Oyster Bay Town Board's new rule that, under the guise of maintaining decorum, authorizes the presiding officer to have someone criminally charged for photographing or recording public meetings in a manner that he finds disturbing.
>
> A rule that permits the presiding officer to remove journalists from a meeting and even have them charged by the police for having a television camera that is too large or for moving about a room to shoot photographs flies in the face of the First Amendment. The rule puts journalists in the position of choosing between doing their work effectively and facing a punishment of up to 15 days in jail. If the rule is allowed to stand, it will be at the expense of freedom of the press and the public's right to know.
>
> Under New York State Open Meetings Law, it is the duty of the Town Board to accommodate large cameras, broadcast equipment and lighting so journalists can broadcast and publish what occurs at public meetings. First Amendment rights are not subject to the discretion of the town supervisor.
>
> We strongly urge the town board to rescind this new rule.

38. Plaintiff's counsel has made a good faith effort to determine if there is another legislative body that imposes criminal sanctions with regard to its rules governing public comment and has been unable to find any.

39. Upon information and belief, this would be the first body to impose criminal sanctions associated with public comment.

40. The Town's decorum rules would constitute an unprecedent burden on public comment.

41. This is only made more troubling by the fact that the Town of Oyster Bay has a clear and well documented history of suppression of press and thuggish tactics with regard to suppression of freedom of expression as outlined in Plaintiff's supporting affidavit.

42. Plaintiff's counsel is unable to find a similarly situated legislative body that has gone through the extraordinary measures to attempt to exclude speech at its meetings or suppress members of the press access to information.

B.	**Movants Will Suffer Irreparable Harm Absent Injunctive Relief**

43.	Plaintiff faces the possibility of arrest for merely speaking at a Town Board meeting. This would create an arrest record that would leave an indelible stain on his character.

C.	**The Balance of the Hardships Tilts Decidedly Toward Movants**

44.	It is not a hardship to return to the previous rules of Decorum. The town was able to ban and have police escort those it found to be in violation of its previous rules. The current resolution only makes it easier for the town but certainly does not create a hardship.

D.	**The Public Interests Favors Granting Injunctive Relief**

45.	No greater benefit to the public interest can be imagined than that where elected officials freely communicate with their constituents. Government cannot operate in a vacuum, and elected officials should be willing participants in a dialogue with the citizens they represent.

## CONCLUSION

Moving Plaintiff respectfully submit this Affirmation in support of the entry of an Order to Show Cause requiring defendants to show why, pursuant to F.R.C.P. 65(a) NS 65(e), a temporary restraining order and a preliminary injunction should not be entered barring the defendants from enforcing its new Decorum Rules.

Yours, etc.,

LAW OFFICES OF CLARKE
& FELLOWS P.C.

_____
JONATHAN C. CLARKE
*Attorney for Plaintiffs*
140 Gazza Blvd.
Farmingdale, NY 11375

Tel: (516) 325-3889
Facsimile: 631-532-0221